UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| LOGMET, LLC <br><br> Petitioners, <br><br> vs. <br><br> NATIONAL LABOR RELATIONS BOARD, <br><br> Respondent. | No. 21-1273 |

## UNDERLYING DECISION FROM WHICH PETITION ARISES

Attached hereto as **Exhibit 1** is the December 1, 2021 Decision, Order and Direction by the National Labor Relations Board in Logmet, LLC and Local Union No. 780, Motion Picture and Video Laboratory Technicians, Allied Crafts and Government Employees, IATSE, Case No. 09–CA–247369.

Dated: January 31, 2022

Respectfully submitted,

/s/ Howard E. Cole
Howard E. Cole
Lewis Roca Rothgerber Christie LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV 89169
Telephone: (702) 949-8315
Facsimile: (702) 216-6175
Email: hcole@lewisroca.com

1

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2022, I electronically filed the foregoing **UNDERLYING DECISION FROM WHICH PETITION ARISES** with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system.

I hereby certify that all the following participants in this case are registered CM/ECF users and will be served by the CM/ECF system.:

Counsel for Local Union No. 780, Motion Picture and Video Laboratory Technicians, Allied Crafts and Govt Employees, IATSE:

Heidi B. Parker, Esq.
Richard Siwica, Esq.
Egan, Lev, Lindstrom & Siwica, P.A.
P O Box 2231
Orlando, FL 32802-2231
*hparker@eganlev.com*
*rsiwica@eganlev.com*

Counsel for the General Counsel of the National Labor Relations Board:

Zuzana Murarova, Esq.
Region 9, National Labor Relations Board
Room 3-111, John Weld Peck Federal Building
550 Main Street
Cincinnati, OH 45202-3271
*zuzana.murarova@nlrb.gov*

Ruth E. Burdick, Esq.
Acting Deputy Associate General Counsel
Appellate and Supreme Court Litigation Branch
National Labor Relations Board
1015 Half Street SE
Washington, DC 20750
*ruth.burdick@nlrb.gov*

Kira Dellinger Vol
1015 Half Street SE
Washington, DC 20750
*kira.vol@nlrb.gov*

Micah P.S. Jost
1015 Half Street SE
Washington, DC 20750
*micah.jost@nlrb.gov*

January 31, 2022          /s/ Howard E. Cole
                                                 Howard E. Cole

# EXHBIT 1

# EXHIBIT 1

NOTICE: This opinion is subject to formal revision before publication in the bound volumes of NLRB decisions. Readers are requested to notify the Executive Secretary, National Labor Relations Board, Washington, D.C. 20570, of any typographical or other formal errors so that corrections can be included in the bound volumes.

**Logmet, LLC *and* Local Union No. 780, Motion Picture and Video Laboratory Technicians, Allied Crafts and Government Employees, IATSE.** Case 09–CA–247369

December 1, 2021

## DECISION AND ORDER

BY MEMBERS KAPLAN, WILCOX, AND PROUTY

On April 5, 2021, Administrative Law Judge Arthur J. Amchan issued the attached decision. The Respondent filed exceptions and a supporting brief, the General Counsel filed an answering brief, and the Respondent filed a reply brief.

The National Labor Relations Board has delegated its authority in this proceeding to a three-member panel.

The Board has considered the decision and the record in light of the exceptions and briefs and has decided to affirm the judge's rulings, findings,[1] and conclusions, and to adopt the recommended Order as modified and set forth in full below.[2]

The judge found, and we agree, that the Respondent was a "perfectly clear" successor under *NLRB v. Burns International Security Services, Inc.*, 406 U.S. 272, 294–295 (1972), as of July 21, 2019, when it led employees of the predecessor, Trailboss Enterprises, Inc., to reasonably believe that they would be retained without any changes in their existing terms and conditions of employment. The record shows that the Respondent's offer letters to the predecessor's employees, issued on July 21, 2019, referenced no terms and conditions of employment other than the employees' base pay rate, which remained the same as the base pay under the predecessor's collective-bargaining agreement with the Union. Additionally, the Respondent deliberately made no mention of new terms and conditions of employment in the drivers' interviews prior to the issuance of the offer letters.[3] In these circumstances, the Respondent's employees were led to reasonably believe that their initial terms and conditions of employment with the Respondent would not differ from those of the predecessor. See *Spruce Up Corp.*, 209 NLRB 194, 195 (1974) (finding perfectly clear successor exception applies in circumstances where "the new employer has either actively or, by tacit inference, misled employees into believing they would all be retained without change in their wages, hours, or conditions of employment"), enfd. mem. per curiam 529 F.2d 516 (4th Cir. 1975). Accordingly, the Respondent violated Section 8(a)(5) and (1) of the Act when on August 22, 2019, it unilaterally set terms and conditions of employment, retroactive to August 1, 2019, that differed from those of the predecessor employer.[4]

However, the judge's finding that the Respondent is a perfectly clear successor under *Burns* does not resolve the allegations that the Respondent unlawfully changed the workweek and pay date of its unit employees. The record includes conflicting testimony, not referenced in the judge's decision, as to whether the Union consented to these changes. Specifically, the Respondent's attorney, Howard Cole, testified that the Union consented to the changes in workweek and pay date in communications he had with the Union's attorney, Paul Berkowitz, on July 31 and August 1, 2019. However, Berkowitz testified that he did not convey consent to Cole. We therefore find it necessary to sever and remand the allegations concerning these changes. On remand, the judge shall make the

---

[1] The Respondent has excepted to some of the judge's credibility findings. The Board's established policy is not to overrule an administrative law judge's credibility resolutions unless the clear preponderance of all the relevant evidence convinces us that they are incorrect. *Standard Dry Wall Products, Inc.*, 91 NLRB 544 (1950), enfd. 188 F.2d 362 (3d Cir. 1951). We have carefully examined the record and find no basis for reversing the findings.

[2] We shall amend the remedy and modify the judge's recommended Order to conform to the Board's standard remedial language for the violation found, and in accordance with our decision in *Cascades Containerboard Packaging—Niagara*, 370 NLRB No. 76 (2021), as modified in 371 NLRB No. 25 (2021). We shall substitute a new notice to conform to the Order as modified.

[3] The Respondent's Operations Manager, Cheryl Field, testified that she instructed the Respondent's Manager, Joseph Carter, not to alarm the incumbent drivers during the interviews and to let them know that their economic terms and conditions of employment were not going to change. We note that, although the judge stated that he declined to credit Field's testimony "in the absence of credible corroborative evidence," he clearly credited Field's admission regarding this instruction to Carter. The judge cited to the relevant transcript pages of Field's testimony in presenting this fact in his decision, and Field's testimony on this point is substantially corroborated by three employee witnesses who testified that Carter made no mention of any changes to terms and conditions of employment during their interviews.

We correct the judge's statement that when interviewing employees, Carter "did not discuss compensation and benefits *other than to say that there would be no change in their wages and hours.*" (Emphasis added.) The uncontradicted testimony of employees Mike Lowry, Eric Benson, and Alan Robbins establishes that Carter made no mention of wages, hours, or any other terms and conditions of employment during their interviews. The judge's inadvertent error on this point does not affect the determination that the Respondent became a perfectly clear successor as of July 21, 2019.

[4] In adopting the judge's finding that the Respondent unlawfully set new terms and conditions of employment, we do not rely on his statement that a perfectly clear successor may set initial terms that are "equivalent" to or not "less generous" than the terms under the predecessor. A perfectly clear successor is required to "bargain with the incumbent union to agreement or impasse before establishing initial terms." *Nexeo Solutions, LLC*, 364 NLRB 570, 581 (2016).

appropriate credibility findings concerning this testimony and determine whether the credited testimony establishes that the Respondent's changes to the employees' workweek and pay date were made with or without the consent of the Union, and based on the finding, whether or not these changes violated the Act.[5]

AMENDED REMEDY

Having found that the Respondent has engaged in certain unfair labor practices, we shall order it to cease and desist and to take certain affirmative action designed to effectuate the policies of the Act. Specifically, having found that the Respondent is a "perfectly clear" successor to Trailboss Enterprises, Inc. and that it violated Section 8(a)(5) and (1) of the Act by failing to bargain with the Union to agreement or impasse prior to unilaterally setting initial terms and conditions of employment for the unit employees, we shall require the Respondent, on request of the Union, to retroactively restore the terms and conditions of employment established by its predecessor and rescind the unilateral changes it has made. The Respondent shall also be required to make affected employees whole for any loss of wages or other benefits they suffered as a result of the Respondent's unilateral changes in the manner set forth in *Ogle Protection Service, Inc.*, 183 NLRB 682 (1970), enfd. 444 F.2d 502 (6th Cir. 1971), with interest as prescribed in *New Horizons*, 283 NLRB 1173 (1987), compounded daily as prescribed in *Kentucky River Medical Center*, 356 NLRB 6 (2010).

In addition, we shall order the Respondent to remit all payments it owes to employee benefit funds, including any additional amounts due the funds on behalf of the unit employees in accordance with *Merryweather Optical Co.*, 240 NLRB 1213 (1979). Further, the Respondent shall be required to reimburse unit employees for any expenses ensuing from its failure to make the required contributions, as set forth in *Kraft Plumbing & Heating, Inc.*, 252 NLRB 891, 891 fn. 2 (1980), enfd. mem. 661 F.2d 940 (9th Cir. 1981), such amounts to be computed in the manner set forth in *Ogle Protection Service*, supra, with interest as prescribed in *New Horizons*, supra, compounded daily as prescribed in *Kentucky River Medical Center*, supra.[6]

Additionally, the Respondent shall be required to compensate affected employees for the adverse tax consequences, if any, of receiving lump-sum backpay awards, and file with the Regional Director for Region 9, within 21 days of the date the amount of backpay is fixed, either by agreement or Board order, a report allocating the backpay awards to the appropriate calendar years for each employee. *AdvoServ of New Jersey, Inc.*, 363 NLRB 1324 (2016). In accordance with our decision in *Cascades Containerboard Packaging—Niagara*, 370 NLRB No. 76 (2021), as modified in 371 NLRB No. 25 (2021), the Respondent shall also be required to file with the Regional Director for Region 9 a copy of each backpay recipient's corresponding W-2 form(s) reflecting the backpay award.

Finally, because the Respondent terminated its subcontract with Data Management Services to provide transportation services at Wright-Patterson Air Force Base and therefore no longer employs the unit employees,[7] we shall order the Respondent to mail a copy of the attached notice to the Union and to the last known addresses of its former unit employees in order to inform them of the outcome of this proceeding.

ORDER

The National Labor Relations Board orders that the Respondent, Logmet, LLC, Dayton, Ohio, its officers, agents, successors, and assigns, shall

1. Cease and desist from

(a) Failing and refusing to bargain with Local Union No. 780, Motion Picture and Video Laboratory Technicians, Allied Crafts and Government Employees, IATSE (the Union), in the following appropriate unit by unilaterally changing the terms and conditions of employment of unit employees without first bargaining in good faith with the Union to agreement or impasse. The bargaining unit is:

> All Full-time and Part-time Employees performing work reflected in the following occupational classifications set forth in Schedule "A" in the execution of work within the Vehicle Operations contract at Wright Patterson Air Force Base, Ohio: truck drivers, forklift operators, and wrecker operators, but excluding all other job classifications in Schedule "A" and excluding all exempt and confidential secretaries.

---

[5] Because the ultimate disposition of these findings solely concerns the factual issue of whether the Union consented to these two specific changes, their disposition has no bearing on our finding that the Respondent became a perfectly clear successor on July 21, 2019, and, as such, was not privileged to unilaterally set initial terms and conditions of employment for unit employees that differed from those of the predecessor.

[6] To the extent that an employee has made personal contributions to a fund that are accepted by the fund in lieu of the employer's delinquent contributions during the period of the delinquency, the Respondent will reimburse the employee, but the amount of such reimbursement will constitute a setoff to the amount that the Respondent otherwise owes the fund.

[7] There is no indication in the record that the Respondent maintains any other operations at Wright-Patterson Air Force Base.

(b) In any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them by Section 7 of the Act.

2. Take the following affirmative action necessary to effectuate the policies of the Act:

(a) Before implementing any changes in wages, hours, or other terms and conditions of employment of unit employees, notify and, on request, bargain with the Union as the exclusive collective-bargaining representative of employees in the bargaining unit described above.

(b) To the extent it has not already done so, on request of the Union, rescind the changes in the terms and conditions of employment for its unit employees that were announced on about August 22, 2019.

(c) Make affected employees whole for any loss of earnings and other benefits suffered as a result of the unlawful conduct in the manner set forth in the remedy section of this decision.

(d) Compensate affected employees for the adverse tax consequences, if any, of receiving lump-sum backpay awards, and file with the Regional Director for Region 9, within 21 days of the date the amount of backpay is fixed, either by agreement or Board order, a report allocating the backpay awards to the appropriate calendar years for each employee.

(e) File with the Regional Director for Region 9, within 21 days of the date the amount of backpay is fixed by agreement or Board order or such additional time as the Regional Director may allow for good cause shown, a copy of each backpay recipient's corresponding W-2 forms reflecting the backpay award.

(f) Preserve and, within 14 days of a request, or such additional time as the Regional Director may allow for good cause shown, provide at a reasonable place designated by the Board or its agents, all payroll records, social security payment records, timecards, personnel records and reports, and all other records, including an electronic copy of such records if stored in electronic form, necessary to analyze the amount of backpay due under the terms of this Order.

(g) Within 14 days after service by the Region, duplicate and mail, at its own expense and after being signed by the Respondent's authorized representative, copies of the attached notice marked "Appendix"[8] to the Union and to all unit employees who were employed by the Respondent at any time since August 1, 2019. In addition to the mailing of paper notices, the notices shall be distributed electronically, such as by email, posting on an intranet or an internet site, and/or other electronic means, if the Respondent customarily communicates with its employees by such means.

(h) Within 21 days after service by the Region, file with the Regional Director for Region 9 a sworn certification of a responsible official on a form provided by the Region attesting to the steps that the Respondent has taken to comply.

IT IS FURTHER ORDERED that the allegations that the Respondent violated Section 8(a)(5) and (1) of the Act by changing the workweek and pay date of its unit employees are severed from this case and remanded to Administrative Law Judge Arthur J. Amchan for further appropriate action as discussed above. The judge shall prepare a supplemental decision setting forth credibility resolutions, findings of fact, conclusions of law, and a recommended Order, as appropriate on remand. Copies of the supplemental decision shall be served on all parties, after which the provisions of Section 102.46 of the Board's Rules and Regulations shall be applicable.

Dated, Washington, D.C. December 1, 2021

|  |  |
|---|---|
| Marvin E. Kaplan, | Member |
| Gwynne A. Wilcox, | Member |
| David M. Prouty, | Member |

(SEAL)     NATIONAL LABOR RELATIONS BOARD

### APPENDIX

NOTICE TO EMPLOYEES
MAILED BY ORDER OF THE
NATIONAL LABOR RELATIONS BOARD
An Agency of the United States Government

The National Labor Relations Board has found that we violated Federal labor law and has ordered us to post and obey this notice.

FEDERAL LAW GIVES YOU THE RIGHT TO

Form, join, or assist a union

---

[8] If this Order is enforced by a judgment of a United States court of appeals, the words in the notice reading "Mailed by Order of the National Labor Relations Board" shall read "Mailed Pursuant to a Judgment of the United States Court of Appeals Enforcing an Order of the National Labor Relations Board."

　　Choose representatives to bargain with us on your behalf

　　Act together with other employees for your benefit and protection

　　Choose not to engage in any of these protected activities.

WE WILL NOT refuse to bargain in good faith with Local Union No. 780, Motion Picture and Video Laboratory Technicians, Allied Crafts and Government Employees, IATSE (the Union) by unilaterally changing your terms and conditions of employment without negotiating in good faith with the Union to agreement or impasse. The bargaining unit is:

　　All Full-time and Part-time Employees performing work reflected in the following occupational classifications set forth in Schedule "A" in the execution of work within the Vehicle Operations contract at Wright Patterson Air Force Base, Ohio: truck drivers, forklift operators, and wrecker operators, but excluding all other job classifications in Schedule "A" and excluding all exempt and confidential secretaries.

WE WILL NOT in any like or related manner interfere with, restrain, or coerce you in the exercise of the rights listed above.

WE WILL, before implementing any changes in wages, hours, or other terms and conditions of employment of unit employees, notify and, on request, bargain with the Union as your exclusive collective-bargaining representative.

WE WILL, to the extent we have not already done so, on request of the Union, rescind the changes in the terms and conditions of employment for our unit employees that were announced on about August 22, 2019.

WE WILL compensate our unit employees for any loss of earnings and other benefits suffered as a result of our unlawful unilateral changes, plus interest.

WE WILL compensate our unit employees for the adverse tax consequences, if any, of receiving lump-sum backpay awards, and WE WILL file with the Regional Director for Region 9, within 21 days of the date the amount of backpay is fixed, either by agreement or Board order, a report allocating the backpay awards to the appropriate calendar years for each employee.

WE WILL file with the Regional Director for Region 9, within 21 days of the date the amount of backpay is fixed by agreement or Board order or such additional time as the Regional Director may allow for good cause shown, a copy of each backpay recipient's corresponding W-2 forms reflecting the backpay award.

LOGMET, LLC

The Board's decision can be found at http://www.nlrb.gov/case/09-CA-247369 or by using the QR code below. Alternatively, you can obtain a copy of the decision from the Executive Secretary, National Labor Relations Board, 1015 Half Street S.E., Washington, D.C. 20570, or by calling (202) 273-1940.



Zuzana Murarova, Esq., for the General Counsel.
Howard E. Cole and Jennifer K. Hostetler Esqs. (Lewis, Roca, Rothgerber, Christie, LLP), of Las Vegas, Nevada, for the Respondent.
Nicholas Wolfmeyer, Esq. (Egan, Lev, Lindstrom & Siwica, P.A.), of Orlando, Florida, for the Charging Party.

## DECISION

### STATEMENT OF THE CASE

ARTHUR J. AMCHAN, Administrative Law Judge. This case was tried via Zoom video conferencing from February 16–19 and February 22–23, 2021. IATSE Local 780 filed the charge in this matter on August 29, 2020. The General Counsel issued the complaint on October 13, 2020.

On the entire record,[1] including my observation of the demeanor of the witnesses, and after considering the briefs filed by the General Counsel and Respondent, I make the following

### FINDINGS OF FACT[2]

#### I. JURISDICTION

Respondent, Logmet, LLC, a limited liability company, is in the business of providing labor at military installations. It commenced work as a subcontractor to Data Management Systems (DMS) employing civilian drivers at Wright-Patterson Air Force Base in Dayton, Ohio on August 1, 2019. Respondent employed these drivers from that date until May 18, 2020. Logmet's main office is in Texas. Annually, Logmet provides services valued in excess of $50,000 in States other than Ohio. Respondent admits, and I find, that it is an employer engaged in commerce

---

[1] At Tr. 962, line 1: Gillespie should be Field.
[2] While I have considered witness demeanor, I have not relied upon it in making any credibility determinations. Instead, I have credited conflicting testimony based upon the weight of the evidence, established or admitted facts, inherent probabilities, and reasonable inferences drawn from the record as a whole. *Panelrama Centers*, 296 NLRB 711, fn. 1 (1989).

within the meaning of Section 2(2), (6), and (7) of the Act and that the Union, IATSE Local 780, is a labor organization within the meaning of Section 2(5) of the Act.

## II. ALLEGED UNFAIR LABOR PRACTICES

The General Counsel alleges that Logmet was a "perfectly clear" successor to a company named Trailboss at Wright-Patterson. Trailboss had a collective-bargaining agreement with IATSE Local 780 covering the employees in question and others which ran from February 1, 2015, to May 31, 2020. The General Counsel alleges that Respondent violated Sections 8(a)(5) and (1) by failing to continue in effect all the terms and conditions of the Trailboss collective-bargaining agreement, particularly those articles relating to shift premiums, the payroll workweek and pay periods, health care coverage, life insurance coverage and a 401K retirement plan.

Sometime prior to July 1, 2019, the General Services Administration of the Federal Government awarded Data Management Systems (DMS) a contract for the provision of transportation services that had been previously awarded to Trailboss. This contract had been awarded to many different contractors over the course of several decades. IATSE Local 780 had represented the drivers at Wright-Patterson since the late 1980s.

DMS' was to begin operating at Wright Patterson on August 1, 2019. On July 3, 2019, DMS contacted Logmet and indicated that it intended to subcontract part of its contract with the Government to Logmet. DMS attached a copy of the Trailboss/IATSE 780 collective-bargaining agreement to its July 3 email from DMS to Logmet. The subcontract between DMS and Logmet was not signed until September 9, 2019.

Initially, DMS discussed awarding the work of 26 employees to Logmet. Later, it changed its proposal to only the 13 drivers. DMS retained the office staff for the transportation operation and apparently signed the Trailboss collective-bargaining agreement that had covered these employees.[3] On July 25, negotiations between Logmet and DMS came to a halt and then quickly restarted. The change in the scope of the subcontract meant that the Logmet bargaining unit only included drivers and was thus considerably smaller than the Trailboss bargaining unit.[4]

On July 16–17, 2019, Logmet, by Joseph Carter, interviewed all the Trailboss drivers for potential employment with it. It did not interview any other employees. The Logmet interviewer met with some employees in a group of 2 or 3. He did not discuss compensation and benefits other than to say that there would be no change in their wages and hours. Indeed, prior to conducting the interviews, Logmet's Operations Manager, Cheryl Field had instructed Carter not to alarm the incumbent drivers. She told him to let them know that their economic terms and conditions of employment were not going to change. Tr. 794–795, 800. Carter followed these instructions when interviewing the drivers. Respondent did not inform unit employees of the changes to the terms and conditions of their employment until August 22 or 23, after they had been working for Logmet for 3 weeks.

On July 21, 2019, Respondent emailed all the former Trailboss drivers an offer of employment beginning on August 1, at a base pay of $22.04 per hour paid in biweekly installments. No other terms of employment were specified. Most or all of the drivers responded within a day, accepting the offer. All 13 did so prior to August 1.[5] Logmet did not interview or offer employment to any driver who had not been a member of the Trailboss bargaining unit.

On July 29, Union Attorney Paul Berkowitz had a telephone conversation with Logmet CEO Wayne Rankin. On July 30, 2019, Logmet retained Howard Cole to represent it with regard to labor issues emanating from its subcontract at Wright-Patterson. In a letter sent that day and/or a telephone conversation that day with then Union Counsel Berkowitz, Cole stated that Logmet did not intend to assume the Trailboss collective-bargaining agreement but would negotiate for a contract with IATSE Local 780. He also stated that Logmet would comply with the Service Contract Act (SCA). Cole also mentioned that Logmet had a Sunday to Saturday workweek and that employees would be responsible for keeping records of their time and attendance. Further, Cole stated that he was not sure whether he or an Ohio attorney would handle negotiations with the Union.

Cole further stated that Logmet intended to establish its benefits program on August 1. He did not provide any information on what those benefits would be. Logmet recognized Local 780 as the exclusive collective-bargaining representative of its Wright-Patterson employees on August 1.

On August 1, the drivers reported to work at 6 a.m., although nobody had told them when to report. They were supervised by Ryan Gillespie, a DMS employee, who had also supervised them as an employee of Trailboss.[6] Logmet did not have any representative at Wright-Patterson. Dispatcher Lisa Duty, a DMS employee, sent the drivers out on their assignments. These were essentially identical to the tasks they performed for Trailboss. On August 1, the drivers signed a second offer of employment at various times during the day.

Logmet's Operations Manager, Cheryl Field, is sometimes referred to in this record by her maiden name, Cheryl Bear. She testified that she had a telephone conversation with Ryan

---

[3] Trailboss mechanics were in a separate bargaining unit. DMS apparently signed the Trailboss collective-bargaining agreement covering these employees as well.

[4] The unit drivers transported people and freight around the Wright-Patterson base and in and out of the base. For example, they drove busses transporting service personnel and transported equipment, such as the staircase for Air Force One when the President's airplane was in the vicinity of Dayton. Most of the vehicles they drive are owned by the United States Government.

[5] One driver, Sargent Engle, transferred out of the bargaining unit to a position with DMS sometime after August 1.

Respondent in its brief at page 4 states only 1 driver returned the July 21 offer letter according to its instructions. However, the record establishes that all of them had accepted this offer by July 30 and that Respondent knew that. Tr. 58, 68, 421, 470–471, 497–500, GC Exh. 30, R. Exh. 57. For example, on July 29, Respondent sent employee Wayne Lowry a hiring kit, GC Exh. 4. Lowry had accepted the July 21 offer by letter, not by fax or email as directed in the offer letter. Tr. 58. No agent of Respondent testified that they did not receive the acceptances or that it revoked the July 21 offers.

[6] Gillespie's employment with Trailboss ended on July 18, 2019. DMS hired him as a ground transportation supervisor on July 23. Gillespie had previously worked for DMS from 2014–2017.

Gillespie on August 1 in which Gillespie put all the drivers on a speakerphone. She testified further that she explained Logmet's compensation and benefits to them at that time. Several employee witnesses: Mike Lowry, Eric Benson and Alan Robbins, and DMS Supervisor Gillespie testified such a call did not take place. I credit their testimony and find that it did not. There is no evidence in this record suggesting that Gillespie, the DMS Operations Manager, has any bias against Logmet. There is no documentary or testimonial evidence corroborating Field's assertions. Respondent's brief at pages 7–8 quotes Field's testimony but does not mention the contradictory testimony. Despite the importance given to this phone call in Respondent's brief, it was not mentioned in Respondent's position statement submitted during the investigation of the charge in this case. (Tr. 921–922.)[7]

Not only do I credit the General Counsel's witnesses on this point, but, as a result, I find that Ms. Field is generally an incredible witness, whose testimony I decline to credit in the absence of credible corroborative evidence. For example, I give no weight to her testimony about what Mr. Lipski, the Union business manager, said to her when they met.

Respondent's Attorney Cole called the Union's Attorney Berkowitz on August 1, informing him that all the former Trailboss drivers had accepted employment with Logmet and that Logmet would recognize the Union. Berkowitz met with the unit drivers on August 1.

Logmet CEO Wayne Rankin and its Operations Manager, Cheryl Field, met with then Union Counsel Paul Berkowitz in Las Vegas on August 13, 2019. On September 18, 2019, Field and Local 780 Business Manager, Jerry Lipski met. Field presented to Lipski Logmet's first proposal for a collective-bargaining agreement.

A complete statement of the wages and benefits being offered by Logmet was sent to drivers on the evening of August 22, 2019. This included the forms for signing up for health insurance.

The drivers' health insurance changed from the Union program with Blue Cross/Blue Shield to one with Aetna, which was administered through the Boon Group.[8] Among the differences in the health insurance plans was the fact that the Aetna Plan had deductibles for all services; the Union's Blue Cross Plan did not for in-network hospital and health benefits (GC Exhs. 26, 31). It appears that some employees had out-of-pocket expenses under the Aetna Plan that they would not have had under the IATSE Blue Cross/Blue Shield Plan.

The drivers' retirement plan changed from one through the Union with Nationwide Insurance Company to a 401K plan administered by Empower via the Boon Group. Logmet did not make any contributions to employees' 401K accounts until after it terminated its contract with DMS on May 18, 2020.

Other changes were the elimination of a shift premium for working the 2d or 3d shift. Logmet also changed the drivers' workweek resulting in their not receiving their first paycheck for an additional week.

Logmet terminated its subcontract with DMS effective May 18, 2020. Since then, the bargaining unit employees have worked for DMS. DMS withheld payment of $287,000 to Logmet. The two companies went to arbitration over this matter. The arbitrator ruled in favor of Logmet.

The United States Department of Labor (DOL) conducted an audit to determine whether Logmet complied with the Service Contract Act. DOL determined that Logmet owed drivers collectively about $6,000 in wages. Logmet attributes this to a time keeping system maintained by DMS, which was separate from its time-keeping system. DOL did not assess any penalty against Logmet, which has paid the drivers the additional amount that was owed to them according to the Labor Department.

Analysis

*Respondent was a "perfectly clear" successor to Trailboss Enterprises and did not adequately inform employees beforehand of any changes it intended to make in their wages, hours and working conditions.*

Ordinarily, a successor employer is not bound by collective-bargaining agreements negotiated by its predecessor and is free to set the initial terms of employment, *NLRB v. Burns Security Services*, 406 U.S. 272, 281–295 (1972). However, there are instances, such as in the instant case in which it is perfectly clear that the new employer plans to retain all the employees in the unit(s) and in which it will be appropriate to have the employer initially consult with the employees' bargaining representative(s) before fixing the initial terms.

> The test for determining successorship under *Burns* and its progeny is well established:
> An employer, generally, succeeds to the collective bargaining obligation of a predecessor if a majority of its employees, consisting of a "substantial and representative complement," in an appropriate bargaining unit are former employees of the predecessor and if the similarities between the two operations manifest a "substantial continuity" between the enterprises."

*Ready Mix USA, Inc.*, 340 NLRB 946, 946–947 (2003)

There is no question that Logmet was not only a successor employer to Trailboss but was a perfectly clear successor to Trailboss with regard to the drivers at Wright-Patterson. It hired all the former Trailboss drivers and nobody else. The drivers performed their duties in an almost identical manner with Logmet as they did with Trailboss.

In *Spruce Up Corp.*, 209 NLRB 194, 195 (1974), the Board restricted the obligations of a "perfectly clear" successor to employers who misled employees into believing they would all be retained without changes to their wages, hours, or conditions of employment. Subsequently, the Board held that the new employer has an obligation to bargain over initial terms when it

---

[7] Even if I were to credit Ms. Field, the information she claims to have shared with unit employees was insufficient to satisfy Logmet's obligations as a "perfectly clear" successor. It would still have forfeited its right to unilaterally set their initial terms and conditions of employment.

[8] Some employees had their medical bills paid by Blue Cross under the Union's health insurance plan for some period after they began working for Logmet. This occurred because Trailboss had made contributions to the Union's health and welfare funds sufficient to pay these bills for months after Trailboss ceased to be the drivers' employer.

displays an intent to employ the predecessor's employees without making it clear that the employment will be on different terms from in those in place with the predecessor. *Canteen Co.*, 317 NLRB 1052, 1053 (1995) enfd. 103 F.3d 1355 (7th Cir. 1997); *Creative Vision Resources, LLC*, 364 NLRB 1299 (2016) enfd. 882 F.3d 510 (5th Cir. 2018); *Walden Security*, 366 NLRB 44 (2018), *Nexeo Solutions, LLC*, 364 NLRB 570 (2016).

Respondent was obligated to notify employees of the specifics of any planned material change in the initial terms and conditions of employment no later than July 21, 2019, when it extended offers to all the Trailboss drivers. *First Student Inc.*, 366 NLRB No. 13 (2018), and cases cited above. Logmet failed to meet its obligations under the Act both because it actively misled the employees to understand that the terms and conditions would not materially change at least by the time it offered them employment on July 21, and in failing to apprise employees of such changes until 3 weeks after they started working for Logmet. Although the drivers had precious little time to look for other employment, Logmet certainly lulled them into believing that there would be no material change in the terms and conditions of their employment at Wright Patterson.

In the instant case, I find the Respondent did not sufficiently explain, in a legally timely manner to the unit employees, the changes that would occur in their working conditions when they became employees of Logmet. Thus, it was not entitled to set the terms of employment initially and unilaterally or make changes in these conditions without bargaining to impasse with the Union, see *Cadillac Asphalt*, 349 NLRB 6, 10 (2007). Respondent was not obligated to sign the Union's collective-bargaining agreement with Trailboss, so long as it provided unit employees wages, hours and working conditions (including such things as health insurance) that were equivalent to those provided by that agreement.

Logmet appears to argue that its alleged compliance with the Service Contract Act negates any obligation to comply with the National Labor Relations Act. It does not cite any precedent in support of this proposition; I thus reject it. Moreover, pursuant to the Service Contract Act, according to Respondent's brief at page 27, "Logmet paid the drivers at WPAFB no less than the wages and fringe benefits to which such employees would have been entitled if employed under the Trailboss CBA." It this statement is accurate it would appear that employees would not be entitled to any compensation pursuant to the remedy section of this decision.

### CONCLUSION OF LAW

Respondent Logmet, LLC was a perfectly clear successor employer to Trailboss Enterprises, Inc. between August 1, 2019, and May 18, 2020, at Wright-Patterson Air Force Base. Logmet violated Section 8(a)(5) and (1) by setting initial terms and conditions of employment for unit employees that were different and less generous from the terms and conditions for unit employees when Trailboss was their employer. This violates the Act because Respondent changed the terms and conditions of employment without notifying unit employees of these changes in a legally timely fashion and then without bargaining to impasse over these terms with the Union.

### REMEDY

Having found that the Respondent has engaged in certain unfair labor practices, I shall order it to cease and desist therefrom and to take certain affirmative action designed to effectuate the policies of the Act. Respondent is required to make whole bargaining unit employees who were adversely affected by its departure from the terms and conditions of employment they enjoyed under Trailboss Enterprises. This includes changes in health and welfare benefits and 401(k) plan, as provided in the Union's collective-bargaining agreement with Trailboss.

On these findings of fact and conclusions of law and on the entire record, I issue the following recommended[9]

### ORDER

The Respondent, Logmet LLC its officers, agents, successors, and assigns, shall

1. Cease and desist from changing the initial terms and conditions of employment of employees without bargaining to impasse regarding such changes at any time that it is a "perfectly clear" successor to another employer—unless it communicated these changes to employees at the time it demonstrated an intent to retain such employees.

2. Take the following affirmative action necessary to effectuate the policies of the Act.

(a) Make whole all bargaining unit employees to the extent they have suffered any losses as a result of the Respondent's unlawful changes to unit employees' initial terms and conditions of employment in the manner set forth in the remedy section of this decision.

(b) Within 14 days after service by the Region, the Respondent shall duplicate and mail, at its own expense, a copy of the attached notice marked "Appendix" on forms provided by the Regional Director for Region 9 after being signed by the Respondent's authorized representative, to all current employees and former employees employed by the Respondent at Wright-Patterson Air Force Base, at any time since August 1, 2019.

(c) Within 21 days after service by the Region, file with the Regional Director a sworn certification of a responsible official on a form provided by the Region attesting to the steps that the Respondent has taken to comply.

Dated, Washington, D.C. April 5, 2021.

### APPENDIX

NOTICE TO EMPLOYEES
POSTED BY ORDER OF THE
NATIONAL LABOR RELATIONS BOARD
An Agency of the United States Government

The National Labor Relations Board has found that we violated Federal labor law and has ordered us to post and obey this notice.

### FEDERAL LAW GIVES YOU THE RIGHT TO

Form, join, or assist a union

---

[9] If no exceptions are filed as provided by Sec. 102.46 of the Board's Rules and Regulations, the findings, conclusions, and recommended Order shall, as provided in Sec. 102.48 of the Rules, be adopted by the Board and all objections to them shall be deemed waived for all purposes.

Choose representatives to bargain with us on your behalf

Act together with other employees for your benefit and protection

Choose not to engage in any of these protected activities.

WE WILL NOT change the initial terms and conditions of employment of employees without bargaining to impasse with their collective-bargaining representative regarding such changes at any time that we are a "perfectly clear" successor to another employer—unless we communicated these changes to employees at the time we demonstrated an intent to retain such employees.

WE WILL make whole all bargaining unit employees formerly employed by Logmet, LLC at Wright-Patterson Air Force Base who were represented by the Motion Picture and Video Laboratory Technicians, Allied Crafts and Government Employees Local No. 780 (IATSE) to the extent they have suffered any losses as a result of our unlawful conduct, i.e., failing to abide by the terms and conditions of employment of their previous employer, Trailboss Enterprises, Inc.

LOGMET, LLC

The Administrative Law Judge's decision can be found at www.nlrb.gov/case/09-CA-247369 by using the QR code below. Alternatively, you can obtain a copy of the decision from the Executive Secretary, National Labor Relations Board, 1015 Half Street, S.E., Washington, D.C. 20570, or by calling (202) 273-1940.

